## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Zachary M.,

      Plaintiff,

          v.

BOARD OF EDUCATION OF
EVANSTON TOWNSHIP HIGH SCHOOL
DISTRICT #202, EVANSTON TOWNSHIP
HIGH SCHOOL DISTRICT #202, and DR.
BONITA SIMON,

      Defendants.

No. 09 CV 797
Judge James B. Zagel

### MEMORANDUM OPINION AND ORDER

Plaintiff Zachary M.[1] sues the Board of Evanston Township High School District 202 for

alleged violations of the Rehabilitation Act and the Americans with Disabilities Act.  He

challenges the same conduct under 42 U.S.C. § 1983.  He also seeks review of a hearing officer's

appellate decision regarding his request for accommodations under the common law *writ of

certiorari*.  Defendants have moved for summary judgment.  For the following reasons, the

motion is granted as to all claims.

## I. LOCAL RULE 56.1

Local Rule 56.1 governs parties' statement of facts on a motion for summary judgment.

Local Rule 56.1 assists the court by organizing the evidence, identifying undisputed facts, and

---

[1]Zach was a minor when this lawsuit was initiated, so his parents filed the suit on his behalf.  He has since reached the age of majority; Defendants therefore challenged his parents' continued standing.  Rather than rule on that challenge, I allowed Zach to substitute in as the real party in interest.  *See* Fed. R. Civ. P. 17(a)(3).  In my discretion and based on the procedural history and subject matter of the suit, I shall continue to use the naming convention for minors involved in lawsuits.

demonstrating precisely how each side proposes to prove a disputed fact with admissible

evidence. *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 527 (7th Cir. 2000). The

movant is required to provide a statement of undisputed material facts, with appropriate record

citations, that justify summary judgment. Local Rule 56.1(a)(3). Citing to the record, the

nonmoving party must admit or deny each of the movant's statements, and may also submit a

statement of additional facts that require denial of summary judgment. Local Rule 56.1(b)(3).

A district court is entitled to expect strict compliance with Local Rule 56.1. *See, e.g.,*

*Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon,* 233 F.3d

at 527. In this case, Plaintiff and Plaintiff's counsel failed to cite to the record for a significant

number of their disputes with Defendant's statement of facts, as is required by Local Rule

56.1(b)(3)(B). The problem is less pronounced, though still evident, in Plaintiff's supplemental

statement of facts. *See* L.R. 56.1(b)(3)(C). It is within the court's discretion to decline to

consider factual statements that fail to comply with Local Rule 56.1. *See Cichon v. Exelon*

*Generation Co.,* 401 F.3d 803, 809-10 (7th Cir. 2005) (court may penalize non-compliance with

Local Rule 56.1 by ignoring proposed facts). While I am inclined to forgive minor transgressions

in citing to the rules, in this case Plaintiff has failed to cite to the record in significant portions of

his Local Rule 56.1 statements. A court is not obliged to scour the record for factual disputes,

especially in cases, such as this one, that are fact-intensive by nature. *See Cracco v. Vitran*

*Express, Inc.,* 559 F.3d 625, 632 (7th Cir. 2009) .[2]

---

[2]In most cases, I have simply omitted unsupported facts. But one subset of facts bears
special mention. Plaintiff's mother, Christine M., has submitted an affidavit which, among other
things, attempts to lay out proof regarding Plaintiff's college admissions. Specifically, Christine
M. swears that, but for Defendant's discriminatory conduct, her son would have been admitted to
Northwestern University. The basis for Christine's opinion is that her daughter attends

## II. FACTS

Plaintiff Zachary M. ("Plaintiff" or "Zach") was a student at Evanston Township High School from the beginning of his freshman year, in fall 2006, through his graduation on June 10, 2010. The remaining Defendants are the Board of Evanston Township High School District 202 ("ETHS") and Dr. Bonita Simon, the hearing officer who conducted a § 504 appeal hearing.

### Plaintiff's Impairment

Zach was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") during the summer of 2007, though ETHS was not given a doctor's official diagnosis of the condition until on or about February 14, 2008. One of Plaintiff's junior and senior year teacher's described his concentration and attention in class as "poor."

### Initial Request for a § 504 Plan

Michael and Christine M. requested that ETHS place Zach on a plan pursuant to § 504 to accommodate his ADHD in October, 2007. While ETHS's Pupil Personnel Services ("PPS") team reviewed Zach's parents' request that Zach be placed on a §504 Plan[3], Zach's teachers and administrators offered Zach the following informal accommodations to Zach:

---

Northwestern, her husband is a professor there, and she has conducted numerical analysis of their admissions standards. Though her ties are significant, they are not enough to permit her to opine on her son's admissions prospects. There is no evidence that Northwestern has a specific formula or set of minimums which guarantee admission. To the contrary, as a highly selective private university, Northwestern's admission criteria are subjective. It is quite likely that no one person can offer an opinion that a specific student would certainly gain admittance to Northwestern. Christine's opinion on this subject would not be admissible at trial as an opinion and I therefore cannot consider on summary judgment.

[3]A "Section 504 Plan" refers to a formalized set of accommodations a disabled person is entitled to if qualified under the Rehabilitation Act of 1973. *See* 29 U.S.C. § 794.

- On October 31, 2007, Karyn Reiber, Zach's counselor and a member of the PPS team, sent an e-mail to Letitia Hinkle, one of Zach's teachers, at Zach's mother's request indicating that Zach is a shy young man and gets nervous speaking in front of others.

- In November 2007, Joel Weiner, Zach's honors chemistry teacher, talked to Zach about his lack of progress and offered him additional academic support in the morning before school. Zach never attended such morning support sessions.

- Kari Jaeckel, Zach's Spanish teacher, offered to enroll Zach in "SOS." SOS is the "System of Support" program, which is a system of academic support offered to all students, and which includes AM support, departmental study centers, a Homework Center, media centers and one-on-one tutoring. AM support is assigned by teachers. This support period, held at the beginning of the school day, provides time outside of class for those students most in need of personalized time with their teachers to work directly on a particular issue or skill.

- Paulo Rocha, another one of Zach's teachers, proposed to Christine M. that they "work together to bring [Zach's] motivation back before it is too late."

A large portion of the evidence considered by the PPS team concerned Zach's academic performance. The backdrop to that performance is as follows: at ETHS, students receive semester marks, or grades (A, A-, B+, B, B-, C+, C, C-, D+, D, F). The grades A and A- indicate "superior" work, the grades B+, B, and B- indicate "excellent" work, the grades C+, C, and C- indicate "average" work, the grades D+ and D indicate "below average work," the grade F indicates "failed," the grade I indicates "incomplete," and the grade IN indicates "incomplete in community service." The following grade points correspond to the letter grades used at ETHS: A, 4.0; A-, 3.7; B+, 3.3; B, 3.0; B-, 2.7; C+, 2.3; C, 2.0; C-, 1.7; D+, 1.3; D, 1.0; F, 0.0; I, 0.0.

At ETHS, grade point average ("GPA") is calculated by averaging the grade points of semester marks in all ETHS courses carrying one or more credits. Grades received in honors courses are weighted by adding .5 points to the grade for the course for the semester. Grades received in advanced placement ("AP") courses are weighted by adding 1.0 points to the

grade for the course for the semester.

Zach's transcript as of November 2, 2007, which provide grades that were relied upon by the PPS team indicate the following:

- During his freshman year (2006-2007 school year), Zach took almost all honors courses, which are among the most challenging of ETHS courses. Zach took the following courses: English (honors), Spanish (honors), history (honors), trigonometry (honors), string orchestra (honors), and biology (honors). Zach took only one non-honors course during his Freshman year.

- During the first semester of his freshman year, Zach received the following grades: A, A-, A-, A-, B, B, B-, and C+. During the second semester of his freshman year, Zach had received the following grades: A, A-, A-, A-, B+, B. Zach's cumulative gradepoint average ("GPA") for his freshman year was a 3.8250 out of 4.0.

- During his sophomore year (2007-2008 school year), Zach took almost all honors and advanced placement ("AP") courses, including: AB Calculus (AP); BC Calculus (AP); English (honors),Spanish (honors), history (honors), Latin American Studies (honors), chemistry/physics (honors), and symphony orchestra (honors). Zach took only one non-honors or -AP course during his sophomore year.

- At the end of the first quarter of Zach's sophomore year, Zach had received the following grades: A, A, B, B, B, B, and C+ in all honors and AP classes, indicating above average performance in reading, science, and math. At the time of the Section 504 request for Zach, Zach had never received a below-average grade at ETHS.

On November 2, 2007, the PPS team met and determined that Zach was not eligible for a § 504 plan for the following reasons: (1) Zach's psychological report did not clearly state what his disability was; and (2) even if Zach did have ADHD, it did not substantially limit the life activity of learning because Zach was performing well above average in school. In a letter to Zach's parents on November 9, 2007, the PPS team explained that Zach was "doing great in his classes," with grades in the "average to above average range" in

"all honors level courses." The team explained that "[a]lthough the psychological testing data indicated some learning weaknesses, the PPS Team does not find any evidence that Zach[ary]'s academic performance and learning are *substantially* limited. [His] scores are commensurate with his above average abilities in the areas of Reading, Science, English, and Math (as indicated by academic records)." The PPS team explained that its decision was based on Zach's most recent classroom profile information, transcripts, psychological evaluation provided by the parents, and Explore scores.

**Accommodations In Lieu of Formal § 504 Plan**

Even though the PPS found Zach was not disabled under § 504 or eligible for a § 504 Plan, Zach was provided accommodations, including the following:

- On November 2, 2007, Karyn Reiber sent an email to Zach's teachers notifying them that Zach has some anxiety approaching adults with questions and/or concerns and that he is shy. The stated purpose for informing Zach's teachers was so they "may be a little more proactive with Zach when something is needed of him or you may believe he may need help in your course."

- On November 9, 2007, Aracely Canchola, a member of Zach's PPS team, sent a letter to Zach's parents memorializing an offer to meet with Zach and Breeda McGrath, School Psychologist, to assess Zach's level of anxiety, work on coping strategies, and discuss organizational strategies.

- On February 27, 2008, Ms. Canchola sent a memo to Zach's teachers informing them that Zach should be granted the following informal accommodations: (1) opportunities to ask for clarification and if needed, have directions repeated; (2) extended time on in-class test and exams; (3) copies of syllabi or assignment sheets with due dates; (4) contact to Mrs. M. at the end of the week if homework assignments were missed; and (5) access to peer/teacher notes.

**Renewed Request for a § 504 Plan**

On or about February 14, 2008, Plaintiffs provided the ETHS a letter from

Walter D. Campbell, MD., MS., pediatrician for Zach, indicating that Zach had ADHD.

Because of this new documentation confirming Zach's ADHD, the PPS team met again on or about March 4, 2008 to determine whether Zach was eligible for a § 504 plan. After reviewing the additional materials provided by Plaintiffs, the PPS team again determined that Zach was not eligible for a § 504 plan because his ADHD did not substantially limit a major life activity, as evidenced by the facts that: (1) Zach had a 3.7 GPA and has never received a semester grade lower than a C+; (2) of the 22 semester grades Zach received since freshman year, only three were C+; (3) Zach was enrolled in some of the most challenging courses at the high school; (4) Zach scored at or above average in all standardized tests.

**§ 504 Appeal Hearing**

After the PPS team's March 4, 2008 decision, Zach's parents filed a request for a § 504 appeal hearing to "resolve differences over whether [Zach] qualifies for a Section 504 plan" by determining whether "his learning is impeded by the impact of his disability."

The 504 hearing was held on November 3, 2008 before Dr. Bonita Simon, an impartial hearing officer.

At the hearing, the ETHS and Zach's parents presented witnesses and submitted documents for the record. The parents alleged that although Zach was achieving "'good' or passing grades," those grades did not represent Zach's "true ability." The parents also alleged that ETHS's refusal to grant Zach a § 504 plan was in retaliation for a pending federal lawsuit by the parents against the ETHS regarding their older son. No other evidence was submitted supporting the claim of retaliation.

7

On November 10, 2008, Dr. Simon issued her decision in favor of the ETHS, in which she found that Zach did not meet the eligibility requirements of § 504. Specifically, Dr. Simon found that: (1) Zach and his parents received sufficient procedural protections; (2) the ETHS did not deny Zach services in retaliation for any former dispute filed by his parents; (3) Zach was performing well above the average student in a demanding and rigorous high school curriculum and was thus not substantially limited in the major life activity of learning; and (4) although the ETHS did not find Zach eligible for a § 504 plan, the ETHS offered and provided reasonable accommodations to assist Zach and to address his parents' concerns.

In her decision on the § 504 appeal, Dr. Simon found that the procedural safeguards of § 504 had been met because the ETHS had followed all procedural requirements in considering the § 504 request. Specifically, Dr. Simon found that: (1) ETHS reviewed and considered independent evaluations; (2) the ETHS convened meetings with the parents to discuss eligibility; (3) the ETHS gave the parents notice of their rights to request a § 504 hearing; and (4) the ETHS sought an impartial hearing officer rather than having the ETHS's § 504 coordinator conduct the hearing.

**Accommodations Provided Despite Second Denial of § 504 Plan**

Despite Dr. Simon's denial of Zach's parents' § 504 appeal because he was not disabled under § 504 and not eligible for a § 504 plan, Zach's PPS team recommended that Zach receive a number of accommodations beginning in March, 2008 (the second semester of Zach's sophomore year). Specifically, the PPS recommended Zach receive the following accommodations: (1) all of the accommodations previously granted (opportunities to ask for clarification and if needed, have directions repeated; extended time on in-class tests and exams;

8

copies of syllabi or assignment sheets with due dates; contact to Zach's mother at the end of the week if homework assignments were missed; and access to peer/teacher notes); (2) preferential seating near his teacher; (3) referral to an "Invest" tutor to assist with organization and time management skills; and counseling services provided by a school social worker or school psychologist to address anxiety issues.

During the first semester of his sophomore year (2007-2008) Zach received the following grades: A, A-, B+, B, B-, C+, C+, P, and P. During the second semester of his sophomore year, Zach received the following grades: A, A, A, B+, B-, C+, P, and P. Zach's cumulative grade point average (GPA at the end of his sophomore year was a 3.7000 out of 4.0).

Despite ETHS's determination that Plaintiff was ineligible for a § 504 plan, his teachers provided him with accommodations during his junior year (2008-2009). Some examples are as follows: Suthinatana Bhudvanbhen-Jung was Zach's junior year Honors English teacher for the 2008-2009 school year. Ms. Jung provided Zach accommodations requested by Zach's mother in an October 2008 conference, including: (1) Full credit on homework assignments turned in no more than one week late; (3) Fifty percent (50%) credit for homework assignments that were severely late, such as three weeks late; (4) Extra time (50% plus any additional time required) for tests; (5) teacher notes given to Zach when he or his parents requested them (Zach disputes that this happened consistently, and adds that his anxiety made it difficult for him to ask for this assistance); and (6) student notes given to Zach. Other students were not granted the same accommodations as a matter of course. Additionally, for the second semester of Plaintiff's junior

year, Ms. Jung gave Zach full credit for all of his late homework assignments after he completed an extra credit project.

During the first quarter, Ms. Jung determined that Zach had plagiarized three assignments. These assignments were supposed to be personal responses regarding a Didactic journal and so the student-author was not to rely on any research in completing the assignment. Ms. Jung became suspicious because the writing on the assignments was not consistent with Zach's writing. She went online and found parts of an internet document that were utilized word for word by Zach for the three assignments. After consulting with Judith Ruhana, the English Department Chairperson, and discussing the matter with Zach, Ms. Jung gave Zach a zero for all three assignments. ETHS policy allowed Ms. Jung to give Zach a failing grade for the quarter or the semester, but Ms. Jung did not utilize that option. Despite the plagiarism, Zach received a grade of B for the semester. One of the assignments that was plagiarized was three weeks late, so even if no penalty had been assessed for plagiarism, Zach could only have received 50% credit for that assignment.

Dr. Russell Kohnken was Plaintiff's teacher during his junior year and senior years at ETHS. Even when not required by a § 504 plan, Dr. Kohnken provided Zach the following accommodations: (1) after becoming aware of Zach's ADHD, Dr. Kohnken had a discussion with Zach regarding whether he needed extended time or needed extra help; and (2) when Zach's mother asked Dr. Kohnken for assignments via e-mail, he responded with the information she sought.

Zach also received accommodations in his junior year U.S. history class. These accommodations included no penalty for late work and extra meetings with his teacher.

Zach also received accommodations in Physics his junior year. These

accommodations included no penalty for late work and extra time on tests. The class notes were also available on a website. During his junior year (2008-2009), Zach took almost all honors and AP courses, which are among the most challenging of ETHS courses. Zach initially enrolled in all AP and honors courses: BC Calculus (AP), chemistry/physics (AP), U.S. history (AP), concert band (honors), symphony orchestra (honors), English (honors), and Spanish (honors). Subsequently, Zach dropped A.P. U.S. history and enrolled in honors U.S. history, because he was receiving a failing grade. Zach took only one non-honors course, which was composed of two semester-long courses.

Zach was enrolled in a variety of extracurricular activities, including orchestra and water polo.

**Post-Administrative Hearing**

On February 9, 2009, the parents filed the instant lawsuit. On October 15, 2009, due to a settlement conference before this Court, ETHS, through counsel, agreed to provide Zach a § 504 plan. ETHS maintained that Zach is not disabled under § 504 and did not admit any liability, but offered the § 504 plan in an effort to resolve the lawsuit. The accommodations provided under the § 504 plan were the same that had previously been offered to Zach as informal accommodations.

Zach was also offered the following accommodations during his junior year, in addition to those required in his § 504 plan, but they did not change his grades. Specifically:

- During the 2009-2010 school year, when Zach's parents complained about deductions being made for late homework, Dr. Kohnken recalculated Zach's grade to remove penalties for late grades. This made virtually no difference in Zach's grade and did not raise the letter grade he received.

- An extra credit assignment that Zach was not allowed to make up, and therefore did not receive any credit for, likely would not have increased his grade

11

appreciably even if he had been allowed to turn it in late because it was only worth four or five points.

During the first semester of his junior year (2008-2009), Zach obtained the following grades: A, A, A, B+, B, C+, C+. During the second semester, Zach obtained the following grades: A, A, A, A, A-, A-, C+. Zach's cumulative GPA at the end of his junior year was a 3.8975. During his senior year (2009-2010 school year), Zach took fewer honors and AP courses, which are among the most challenging of ETHS courses, than in previous years. Zach took: Calculus (AP), chemistry/physics (AP), English (AP), concert band (honors), symphony orchestra (honors). Zach took three non-honors/non-AP courses. Zach's cumulative GPA at the end of his senior year was a 3.949.

During the first semester of his senior year, Zach obtained the following grades: P, A, A, A-, A-, B, C. During the second semester, Zach obtained the following grades: P, A, A, A, A-, B, B-, B-. Zach received a C in chemistry/physics AP during his first semester and a B- in chemistry/physics during his second semester. Zach's classes have grading matrices in which homework and other assignments count for very little of the student's grade. In Chem/Phys, for example, 50 percent of a student's total grade is from tests, 10 percent is from homework; and 10 percent is from a learning summary. The homework grade is "trivial" and the homework grade for chemistry alone is worth even less (5 percent). Teachers have great discretion in evaluating students and giving grades. Many of the grades assigned are subjective. In chemistry/physics AP, test grades clearly were the weak part of Zach's overall grade. Zach had the option of dropping AP chemistry/physics for his senior year, but did not do so.

**Zach's College Acceptances**

Zach graduated with a final GPA of 4.1346 out of 4.0. and a class rank of 159 out of 655 students. This placed him in the top quartile of ETHS graduates. Zach never received below a C grade at ETHS.

Zach took the ACT without accommodations and received a score of 34, meaning Zach was in the top one percent of all students who take the ACT nationally.

Zach applied to four universities: the University of Michigan, the University of Illinois (main campus), the University of Wisconsin (main campus), and Northwestern University and was accepted or waitlisted at all but one (Northwestern University). Zach's parents wanted him to attend Northwestern, where his father is a professor, but Northwestern was the farthest from his reach of all the universities to which he applied. Zach ultimately chose to attend the University of Illinois.

## III. STANDARD OF REVIEW

Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). All disputed facts are resolved and reasonable inferences are drawn in favor of the non-moving party, Zachary M. *See Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Forrest v. Prine*, 620 F.3d 739, 743 (7th Cir. 2010) (quoting *Anderson*, 477 U.S. at 250-51).

Summary judgment is sometimes called the "put up or shut up" moment in litigation, *see, e.g.*, *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 476 (7th Cir. 2010); *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009). This means that the non-moving party is required to marshall and present the court with the evidence they contend will prove their case. *Id.* "Evidence" in this context must be admissible, *see Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011), and must be evidence on which a reasonable jury could rely. See *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 613 (7th Cir. 2008). Self-serving and unauthenticated statements are insufficient to create a genuine issue of material fact. *See Cichon*, 401 F.3d at 809 n. 8 (citing *Rogers v. City of Chicago*, 320 F.3d 748, 751 (7th Cir. 2003)). "To survive summary judgment, Plaintiff must make a sufficient showing of evidence for each element of her case that she bears the burden of proving at trial." *Goodman v. NSA, Inc.*, 621 F.3d 651, 653-654 (7th Cir. 2010).

## IV. ANALYSIS

Counts I and II allege past and ongoing violations of the Americans with Disabilities Act and the Rehabilitation Act. Title V of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 were designed to protect disabled persons from discrimination in the provision of public services. *Werth v. Bd. of Dirs.*, 472 F. Supp. 2d 1113, 1126 (E.D. Wis. 2007). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, Title II of the ADA states that "no qualified individual with a disability shall, by reason of such

14

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Because the reach of both statutes is substantially the same, claims for disability discrimination under these provisions are generally analyzed together. *Werth*, 472 F. Supp. 2d at 1126 (citing cases).

## A. Is Zach a "Qualified Individual with a Disability"?

Defendants argue at length that they are entitled to summary judgment on the grounds that Plaintiff is not a "qualified individual with a disability," a prerequisite to the protections provided by both the Rehabilitation Act and the ADA. There is a twist in this case in that a significant change in the definition of "disabled" took place via the ADA Amendments Act of 2008. ADA Amendments Act, Pub. L. No. 110-325, § 4, 122 Stat. 3553, 3555 (2008). The changes were effective January 1, 2009, which falls in the middle of the course of conduct alleged in this case. All sides agree the changes were not made retroactive, so the court is left to consider an alteration of a significant relevant standard mid-stream in a case.

Unfortunately, neither side has devoted much, if any, analysis as to how this shift in the definition of "disabled" should affect the outcome of this case.[4] In lieu of ordering further briefing on the issue, however, I have exercised my discretion to consider the parties' other arguments for and against summary judgment. I have done this assuming - but explicitly not deciding - the issue of whether or not there are triable issues related to the Plaintiff's being

---

[4] Plaintiffs devote no portion of their briefing to this issue. Defendants briefly acknowledge these changes in a short footnote but then state, without explication or citation, that the amendments "expanded the ADA and § 504 definitions of 'disability,' the original standard for [§] 504 eligibility must still be met."

"disabled" under the ADA and the Rehabilitation Act. Finding that the claims otherwise warrant summary judgment, I need not make a determination on the "disability" issue.

**B. Claims I and II: Viability of the Forms of Relief.**

Defendants' threshold argument is that Counts I and II are moot, and relatedly that Plaintiff seeks relief a federal court cannot properly order. I find that while I cannot order certain relief, the claims are not moot.

The argument follows from the requests for relief. Count I of the Amended Complaint sought the following:

> [T]hat the defendants be ordered to MAKE Zach eligible for a section 504 plan and to provide Zach with all necessary reasonable accommodations. Plaintiffs also pray that this Honorable Court order the defendants to recalculate Zach's grades without point/credit deductions for late or disorganized work.

Count II asked for similar relief:

> Plaintiffs respectfully pray that this Honorable Court enter an order compelling the defendants to immediately convene a meeting in order to determine whether or not Zach is eligible for reasonable accommodations under section 504.

**i. Grade Recalculation**

I first consider the question of whether I can order ETHS to recalculate Plaintiff's grades. Defendant argues that this form of relief is not an appropriate form of relief from a federal court, or alternatively that such relief is moot. I determine that this form of relief is simply not available under the circumstances of this case.

Plaintiff concedes that this court lacks the power to enter any specific set of grades. What they ask is that I "order the defendants to restore all points that were improperly deducted AND

to recalculate [Plaintiff's] grades on that basis. Even though Zach is in college now, this recalculation may be important should he attempt to transfer to another university (i.e. capable of repetition)." The allegedly "improperly deducted" points include anything tied to late homework, class participation, or otherwise traceable to Plaintiff's alleged disabilities.

Courts are always reluctant to wade into the murky waters of such purely academic matters as grade calculation. *See generally Anderson v. University of Wisconsin*, 841 F.2d 737, 741 (7th Cir. 1988) (citing cases). The facts of this case implicate the reason for that reluctance. Even assuming Rehabilitation Act or ADA violations on the merits, an order compelling ETHS to recalculate Plaintiff's grades would inevitably call on this court to inject itself into the purely academic judgments of high school teachers. This is because the precise nature of all of Plaintiff's various point deductions is not entirely clear and would surely be subject to new rounds of dispute. To take just one example, Suthinatana Bhudvanbhen-Jung, Plaintiff's junior year honors English teacher, gave Plaintiff zero points on a series of three writing assignments. Jung gave the zero grades because she had determined that Plaintiff had plagiarized the assignments. Plaintiff disputes that this series of incidents constituted plagiarism, and instead claims that anxiety stemming from the assignment deadline caused him to inadvertently email text from a website to the teacher. ETHS counters that even on Plaintiff's version of the facts this would have been improper because the assignment expressly barred outside research.

This example (among others) highlights the impropriety of attempting to go back and revise an entire high school academic record. Such an exercise would inherently involve the court in subjective academic judgments - judgments like what constitutes impermissible

17

plagiarism in a high school English class - that are entirely outside the province of a federal court.

### ii. Mootness

Defendant further argues that the requests for § 504 plan or for a meeting to discuss such a plan is moot because Plaintiff in fact received such a plan. Further, Defendant points out that Plaintiff is no longer a student at ETHS such that a § 504 plan issued by ETHS would afford him any practical relief. Plaintiff responds that the relief would take the form of recalculated grades which could benefit him at some point in the future (for instance, if he were to try to transfer from the University of Illinois). Defendant replies that no court can order an educational institution to recalculate grades.[5] Plaintiff's final argument is that the claims under Counts I and II are still viable because they could recover compensatory damages.

Federal courts have no authority to rule where the case or controversy has been rendered moot. *Cornucopia Inst. v. United States Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009). Thus, "if an event occurs while a case is pending that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the case must be dismissed." *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)) (alterations omitted). But, an "entire claim is not mooted simply because the *specific* relief it sought has been rendered moot." *Id.* (emphasis in original).

---

[5] I recognize that Defendant actually makes two arguments regarding grade calculation. Under one scenario, the entry of a § 504 plan alone would automatically trigger a grade recalculation. Under the second scenario, the court would simply order grade recalculation directly, separate and apart from any § 504 plan.

18

The final point is the critical one. It is true that ordering a new § 504 plan or a meeting to address such a plan may offer no effectual relief to Plaintiff because he has graduated from ETHS. S*ee Board of Educ. v. Nathan R.*, 199 F.3d 377, 381 (7th Cir. 2000) (holding that graduated high school student's claim for special education services under the Individuals with Disabilities Act became moot when the student graduated from high school). Those forms of relief are therefore moot. Nevertheless, Plaintiff's request for damages means that he has a live case. I therefore must consider the merits of Counts I and II, conceived of solely as a damages claims.

### iii. Compensatory Damages

Having determined that compensatory damages are the only viable form of relief remaining under Counts I and II, I move on to the merits of the summary judgment motion.

Compensatory damages are available under both the ADA and the Rehabilitation Act, but such damages are available "if -- and only if -- the plaintiff shows discriminatory intent." *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 917-918 (N.D. Ill. 2009) (*citing, inter alia, Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001)). The mine run of courts has determined that to establish intentional discrimination the plaintiff must show defendants acted with "deliberate indifference." *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* Put another way, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. Wyo. 1999).

Here, no evidence supports an inference that ETHS was "deliberately indifferent" to Plaintiff's assertion that he was disabled and therefore needed accommodations. What the undisputed evidence shows is that ETHS conducted a careful review of Plaintiff's circumstances and, though they ultimately determined that he was not "disabled" as they thought law defined the term, they nonetheless proffered some accommodations to Plaintiff. Right or wrong in the technical sense, no evidence supports a conclusion that ETHS was "deliberately indifferent" to a "substantial likelihood" that Plaintiff's rights would be violated. Defendants are therefore entitled to summary judgment on Claims I and II.

## C. Claim III: 42 U.S.C. 1983

Claim III reasserts Counts I and II as claims against ETHS under 42 U.S.C. § 1983. Section 1983 provides a right of action for violations of federal constitutional and many statutory rights. *See Maine v. Thiboutot*, 448 U.S. 1 (1980). In the case of federal statutes, however, § 1983 suits are not available if, among other things, the statute itself offers a "comprehensive enforcement scheme." *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985). Defendants argue that both the Rehabilitation Act and ADA offer such schemes, and therefore no § 1983 claim is actionable here. Defendants concede, however, that neither the Supreme Court nor the Seventh Circuit has expressly ruled on the issue, and that even the district courts within the district are in conflict over the issue. *See, e.g., Silk v. City of Chicago*, No. 95 CV 0143, 1996 WL 312074, at *18-19 (N.D. Ill. Jun. 7, 1996) (§ 1983 action unavailable in Rehabilitation Act and ADA context); *River Forest Sch. District No. 90 v. Ill. State Bd. Of Educ.*, No. 95 CV 5353, 1996 WL 89055 (N.D. Ill. Feb. 28, 1996).

I need not settle the conflict in authority, because even assuming a § 1983 claim is actionable here, Defendants are entitled to summary judgment on the claim. Both parties agree that if actionable, Plaintiff would have to prove that any violation must stem from "an official policy or custom" of ETHS. *Sow v. Fortville Police Dep't*, 636 F.3d 293 (7th Cir. 2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). Plaintiff argues that Defendants' "established practice is to deny a [§] 504 plan and the necessary accommodations to any student who has good grades." Plaintiff cites no evidence to support this belief, and none is apparent on the factual record. It is clear from the undisputed facts that in Zach's specific case his academic performance formed a large part of the school's determination that Zach was not substantially limited in his learning abilities. But there is no documentary or testimonial evidence that this determination flowed from a more generalized policy or custom. Moreover, even in Zach's own case grades were not the only part of the determination. The PPS team also considered Zach's overall psychological profile and his ability to participate and succeed in extracurricular activities ranging from water polo to orchestra. There being no evidence to support a policy or custom claim, summary judgment is granted on Count III.

**D. Claim IV**

Claim IV is a request for *writ of certiorari* regarding Dr. Bonita Simon's determination that Plaintiff was ineligible for a § 504 plan. Defendant argues that this claim is moot. Under Illinois common law, a *writ of certiorari* is available to provide an avenue of review of agencies and tribunal action exercising administrative functions, when review is otherwise unavailable. *See Bodenstab v. County of Cook,* 569 F.3d 651, 661-62 (7th Cir. 2009), *cert. denied*, 130 S. Ct.

1059 (2010) (citing *Stratton v. Wenona Community Unit Dist. No. 1,* 551 N.E.2d 640, 645 (Ill. 1990)).

Defendant is entitled to summary judgment on this claim on the basis of mootness. The ultimate determination Dr. Simon made was that Plaintiff was ineligible for a § 504 plan from ETHS. If I were to unsettle this decision, the relief afforded would be that Plaintiff is given such a plan. For the reasons discussed in the preceding section, Plaintiff would get no "effectual relief whatever" if he were given such a plan. *Cornucopia Inst.*, 560 F.3d at 676. Therefore, Defendants are entitled to summary judgment on Count IV.

**E. Retaliation Theory**

Plaintiff argues at various points under a retaliation. There is no specific claim for ADA or Rehabiliation Act retaliation, but the argument warrants brief consideration. The ADA proscribes retaliation for protected activities such as seeking accommodations. *See* 42 U.S.C. 12203 (a). Here, Plaintiff's argument is that he was retaliated against because his parents filed a disability suit on behalf of his brother, John M., who has Down Syndrome. The case was filed in November of 2005, though it appears that the litigation lingered until at least early 2009. *See John M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*, No. 05 CV 6720, 2009 U.S. Dist. LEXIS 20567 (N.D. Ill. Mar. 16, 2009). Beyond the bare fact that the litigation was instigated before Plaintiff's claim here, Plaintiff does not explain - beyond bare supposition - how it is that Defendants' denial of a plan was because of his brother's case. "[S]uspicious timing alone is insufficient to establish a genuine issue of material fact," *Turner v. The Saloon. Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010), and in this case Plaintiff has at best offered suspicious timing. Summary judgment must be granted on the implied retaliation claim.

**V. CONCLUSION**

      For the foregoing reasons, Defendants' motion for summary judgment as to all claims is

GRANTED.

                                 ENTER:

                                 _____

                                 James B. Zagel
                                 United States District Judge

DATE:  November 8, 2011